Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Blanche M. Manning | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 4310 | **DATE** | September 4, 2002 |
| **CASE TITLE** | *Nematollahi v. Starving Students, et al.* | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

Defendants' Motion for Summary Judgment

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] National's Motion for Summary Judgment [25-1] is granted as to the value of Nematollahi's claim. Because Nematollahi released his goods for a value not to exceed $5,000, National's and Starving Students' liability, to the extent it is established, will be limited to $5,000.

(11) ■ [For further detail see order attached to original minute order]

| | | | | Document Number |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | |
| | No notices required. | | number of notices | |
| ✓ | Notices mailed by judge's staff. | | | |
| | Notified counsel by telephone. | | SEP 05 2002 date docketed | |
| | Docketing to mail notices. | | | |
| | Mail AO 450 form. | | docketing deputy initials | 31 |
| | Copy to judge/magistrate judge. | | | |
| | RTS | courtroom deputy's initials | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION



OMID NEMATOLLAHI, )
)
Plaintiff, )
) The Hon. Blanche M. Manning
v. )
) Case No. 01 C 4310
)
STARVING STUDENTS, INC., a California )
corporation, and NATIONAL VAN LINES, )
INC., an Illinois corporation, )
)
Defendants. )

## MEMORANDUM AND ORDER

Plaintiff Omid Nematollahi filed this action pursuant to the Carmack Amendment of the Interstate Commerce Act, 49 U.S.C. § 14706, alleging that National Van Lines, Inc. ("National") and Starving Students, Inc. ("Starving Students") breached their contract to ship his household goods from his Richmond, California home to his new residence in Schaumburg, Illinois. This matter is before the court on National's motion for summary judgment pursuant to Federal Rule of Civil Procedure 56. For the following reasons, National's motion for summary judgment is granted.

### I. BACKGROUND

#### A. Local Rules of the United States District Court -- Northern District of Illinois

Under the local rules, a party seeking summary judgment must file "a statement of material facts as to which the moving party contends there is no genuine issue and that entitle the moving party to a judgment as a matter of law" consisting of "short numbered paragraphs, including within each paragraph specific references to the affidavits, parts of the record, and

other supporting materials relied upon to support the facts set forth in that paragraph. Failure to submit such a statement constitutes grounds for denial of the motion." *See* Local Rule 56.1(a)(3). The moving party, National, properly filed a statement of facts pursuant to this rule.

On the other hand, Local Rule 56.1(b) requires that a corresponding party submit a "concise response" to the movant's statement, which must contain "[a] response to each numbered paragraph in the moving party's statement, including in the case of any disagreement, specific references to affidavits, parts of the record, and other supporting materials relied upon ...." *See* Local Rule 56.1(b)(3)(A). Local Rule 56.1(b) also permits the responding party to submit "a statement, consisting of short numbered paragraphs, of any additional facts that require the denial of summary judgment, including reference to the affidavits, parts of the record, and other supporting materials relied upon ...." *See* Local Rule 56.1(b)(3)(B).

Failure to comply with Local Rule 56.1 is not a "harmless technicality." *Waldridge v. American Hoechst Corp.*, 24 F.3d 918, 924 (7th Cir. 1994). A party who does not properly contest the opposing party's Rule 56.1(a)(3) facts is considered to have admitted those facts to the extent that they are properly supported by the record. *See* Local Rule 56.1(b)(3); *Michas v. Health Cost Controls*, 209 F.3d 687, 689 (7th Cir. 2000).

Nematollahi has failed to file a response to National's statement of facts in the form required, that is, a list of short paragraphs with cites to the record. Instead of filing a statement of facts, Nematollahi filed an amendment to his initial response to National's summary judgment merely attaching a stack of purported correspondence (signed and unsigned) between the parties. Neither Nematollahi's initial response to National's motion for summary judgment, nor his subsequent amended response specifically controvert any of National's facts as required by Local

2

Rule 56.1. Therefore, National's factual assertions in its Local Rule 56.1(a)(3) statement that are supported by the record are admitted. *See Michas,* 209 F.3d at 689; *see also Markham v. White,* 172 F.3d 486, 490 (7th Cir. 1999) (strict enforcement of local rules is necessary to allow the court to organize evidence and identify undisputed facts).

With the above in mind, the following facts submitted by National are supported by specific references to the record and are deemed admitted for the purposes of this summary judgment motion.

### B. Facts

National is a shipping company that routinely picks up goods prepared by its local agents and moves them interstate. National had an agency agreement with Starving Students that allowed Starving Students to act as National's agent for certain long distance moves. National's local agents routinely prepare an inventory of the goods to be shipped. National drivers attach a rider to the inventory if they determine that any goods are missing or damaged at the time of pick up from the local agent.

On or around February 26, 1996, National's driver arrived to pick up Nematollahi's household goods slated to ship from Starving Students' Milpitas, California location to Nematollahi's residence in Schaumburg, Illinois. At the time of pickup, National's driver prepared a rider indicating many of Nematollahi's belongings were either missing or damaged. The rider was prepared and signed by National's driver and contains a signature of a Starving Students' agent. Nematollahi's remaining household goods were delivered to his Schaumburg residence.

1.  **Sarros Letter**

After his goods were delivered, Nematollahi sent a letter to National expressing his dissatisfaction with how his move was handled. Lisa Sarros, a senior claims adjuster with National, wrote a letter dated November 13, 1996, responding to Nematollahi's letter. The text of the letter reads in full:

> We are in receipt of your letter and regret that your move was not handled to your complete satisfaction.
>
> However, please be advised that Starving Students has contacted us and advised us that your claim is being processed by their insurance company named Dodge Warren and Peters. The adjuster's name processing that claim is Tim Matroney. Your claim number with them is B640L9669249. Their telephone number is 1-800-453-6411. Please contact them for information on the processing of your claim.
>
> Should you have any questions regarding the above information, please feel free to contact me.

National did not contact Nematollahi again and considered Nematollahi's claim closed in 1998. On July 6, 2000, Starving Students' insurer, Fireman's Fund Insurance Company, sent Nematollahi a check in the amount of $5,000 for what Fireman's Fund considered "full and final settlement" of the claim. Nematollahi rejected this settlement offer.

2.  **Nematollahi's Agreement with Starving Students**

Both defendants entered into contracts with Nematollahi governing their rights and obligations concerning the shipping and carrying of Nematollahi's household goods. The first is an Agreement for Service ("Agreement") which details the arrangements agreed upon between Starving Students and Nematollahi and is signed by both parties. The Agreement is dated January 30, 1996, and includes information for pick up of "used household goods and personal

effects" from Nematollahi's California residence to a Starving Students location. Under "Valuation Declaration", the Agreement lists three options available to cover "loss or damage." The text of this section reads in its entirety:

VALUATION DECLARATION **There are three (3) options available to cover loss or damage.**

1. 60 cents per pound per article. This minimum coverage for lost or damaged items is based on 60 cents times the weight of the article. This coverage is provided at no additional charge.

2. Actual Cash Value. This option provides for lost [sic] or damages based on actual cash value, including depreciation at the time of loss or damage, up to the total dollar amount of value declared by you. You may be charged for this coverage.

3. Full Value Protection. This option provides for the lost or damaged items based on current replacement value at the time of loss or damage, up to the totaldollar [sic] amount of valuation declared by you. This is subject to a deductible selected by you. You may be charged for this coverage. DEDUCTIBLES _____ $250.00 _____ $500.00 Reference General Order 136. Carrier shall not offer Option 3 unless it has obtained cargo insurance in an amount sufficient to cover the monetary responsibility assumed.

NOTICE    Coverage for loss and damage is limited to the Actual Cash Value of losses up to the amount of $20,000 unless the Shipper signing this Agreement inserts in the space below, in his or her own handwriting, another value. You may be charged for coverage provided other than 60 cents per pound per article. **Shipper hereby releases the entire shipment to a value not exceeding $ _____** (To be completed by shipper signing below)

(Emphasis added). The amount $5,000 is handwritten in the last blank. Thus, the final sentence reads: "Shipper hereby releases the entire shipment to a value not exceeding $5,000." Below the text of this section is a rate chart which contains what is purported to be the shipper's initials, O.N., and his signature next to where the document lists $5,000 as the "DECLARED VALUE."

### 3. Nematollahi's Agreement with National

The second contract involved is the Registration—Cost of Service—Order For Service

5

agreement ("Service Agreement") between National and Nematollahi and is signed by both parties. This Service Agreement, dated February 12, 1996, indicates that Nematollahi agreed to use National to ship his household goods from his residence in Richmond, California to his new residence in Schaumburg, Illinois. The valuation section reads:

> SHIPMENT VALUATION IS NOT INSURANCE.
> IT IS A TARIFF LEVEL OF MOTOR CARRIER LIABILITY
>
> SHIPMENT VALUATION PROTECTION
>
> Unless the shipper expressly releases the shipment to a value of 60 cents per pound per article the carrier's maximum liability for loss and damage shall be either the lump sum value declared by the shipper of an amount equal to $1.25 for each pound of weight in the shipment, whichever is greater. The shipment will move subject to the rules and conditions of the carrier's tariff. Shipper hereby releases the entire shipment to a value not exceeding _____ (to be completed by the person signing below)
>
> _____
> (to be filled out by the person signing below)
>
> NOTICE    The shipper signing this Order For Service must insert in the space above, in his own handwriting, either his declaration of the actual value of the shipment, or the words "60 cents per pound per article." Otherwise the shipment will be deemed released to a maximum value equal to $1.25 times the weight of the shipment in pounds. The cost is 70 [cents]/$100.00 of Shipment Valuation.

This section for release of the shipment was left blank. An additional section of the Service Agreement titled "REPLACEMENT VALUE PROTECTION" reads:

> Option A - [ ] Replacement Value Protection (Min. $3.50 lb.) No claim deductible.
>
> Option B - [ ] Replacement Value Protection less $250 claim deductible (Min. $3.60 lb.)
>
> Option C - [ ] Replacement Value Protection less $500 claim deductible (Min. $3.50 lb.)
>
> .....

6

> The shipper signing this contract must insert in the space below, his or her declaration of the released value of the shipment. Otherwise, the shipment will be deemed released to a value equal to $3.50 times the weight in pounds. **Shipper hereby releases the entire shipment to a value not exceeding $ _____.**

(Emphasis added). Option A under "Replacement Value Protection" was checked and the amount $5,000 was handwritten in the last blank. Thus, the last sentence reads, "Shipper hereby releases the entire shipment to a value not exceeding $5,000."

## II. DISCUSSION

The Carmack Amendment established a nationally uniform rule of carrier liability concerning the interstate shipment of goods and preempts state and common law remedies covering this subject. *North Am. Van Lines, Inc. v. Pinkerton Sec. Sys., Inc.*, 89 F.3d 452, 453-54 (7th Cir. 1996). The Carmack Amendment's purpose is "to relieve shippers of the burden of searching out a particular negligent carrier from among the often numerous carriers handling an interstate shipment of goods." *Reider v. Thompson*, 339 U.S. 113, 119 (1950). To achieve this goal, "[t]he issuer of the bill of lading and the delivering carrier are prima facie liable even though the goods may have been damaged by intermediate carriers; it's up to the defendants to put the finger on the guilty carrier." *Pizzo v. Bekin Van Lines Co.*, 258 F.3d 629, 634 (7th Cir. 2001).

National moves for summary judgment on three bases: (1) this suit is barred by the statute of limitations as set forth in the Carmack Amendment; or (2) the suit is barred by the doctrine of laches; or (3) if the suit is allowed, Nematollahi released his shipment for a value not exceeding $5,000.

### A. Summary Judgment Standard

Summary judgment is appropriate when the "pleadings, depositions, answers to

interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Carrett*, 477 U.S. 317, 322-23 (1986). Usually, when reviewing a motion for summary judgment, the court construes all facts and inferences in favor of the non-moving party. *Brasic v. Heinemann's Inc.*, 121 F.3d 281, 284 (7th Cir. 1997). But when the plaintiff fails to comply with the local rules by not responding to the movant's statement of facts, there is no factual dispute. *Id.* Therefore, the court departs from its usual posture of construing all facts in favor of the non-moving party and accepts as true all material facts supported by the record in the moving party's statements. *Id.*

### B. Statute of Limitations

National asserts that Nematollahi's suit is barred by the "two year" statute of limitations period set forth in the Carmack Amendment. National, however, misstates the limitations period. The Carmack Amendment's limitations section entitled "Minimum period for filing claims" states:

> A carrier may not provide by rule, contract, or otherwise, a period of less than 9 months for filing a claim against it under this section and a period of less than 2 years for bringing a civil action against it under this section. The period for bringing a civil action is computed from the date the carrier gives a person written notice that the carrier has disallowed any part of the claim specified in the notice.

49 U.S.C. § 14706(e)(1).

Courts have concluded that the Carmack Amendment's limitations period is not a rigid standard, but rather sets forth a reasonable time limit for filing a claim. *See Yamazen USA, Inc. v. Chicago & Northwestern Transp. Co.*, 790 F.2d 621, 623 (7th Cir. 1986). Indeed, as the plain language of the statute indicates, the limitations set forth are minimum, not maximum conditions.

8

*See Shao v. Link Cargo (Taiwan) Ltd.*, 986 F.2d 700, 707 (4th Cir. 1993). "The Carmack Amendment thus contemplates that limitation periods are terms to be bargained over between shipper and carrier...." *Id.* at 707-08.

In order for the statute of limitations to begin running, the carrier must unequivocally disallow the shipper's claim. *See Morrell & Co. v. Chicago, Rock Island & Pacific R.R. Co.*, 495 F.2d 331, 333 (7th Cir. 1974); *see also White v. United Van Lines, Inc.*, 758 F.Supp. 1240, 1242 (N.D. Ill. 1991) ("[B]ill of lading's limitations period is triggered when the carrier's notice of disallowance is clear, final and unequivocal.").

### 1. Agreed Upon Limitations Period

Because the Carmack Amendment sets forth a minimum time period for the filing of a claim beyond which the shipper and carrier are free to contract, this court must decided whether the parties contracted to a limitations period. National contends that language in the Service Agreement incorporates a time limitation of two years and one day within which to file a claim. Specifically, National points to the language in the Service Agreement which states that the shipment will move subject to the rules and conditions of the carrier's tariff.

This language – subject to the rules and conditions of the carrier's tarriff – alludes to earlier statutory language that no longer applies. *See Tempel Steel Corp. v. Landstar Inway, Inc.*, 211 F.3d 1029, 1030 (7th Cir. 2000). Tariffs are standard contractual terms that shippers and carriers could not contract around – these tariffs were filed with the Interstate Commerce Commission and were available for public inspection. *See id.* In 1995, the ICC Termination Act abolished tariff filing and cancelled the legal effectiveness of most existing tariffs. *Id.* The tariff method was replaced with 49 U.S.C. § 13710(a)(1) which provides that: "A motor carrier

9

of property ... shall provide to the shipper, on request of the shipper, a written or electronic copy of the rate, classification, rules, and practices, upon which any rate applicable to its shipment or agreed to between the shipper and carrier is based."

The court concludes that the parties did not contract to a two year and one day limitations period based on National's tariff. There are insufficient facts in the record to shed light on whether Nematollahi knew that National had a standard "tariff" regarding limitations periods or that he knew that such terms were available for his review. *See Dean Foods Co. v. Consolidated Freightways*, 29 F.Supp.2d 495, 496 (N.D. Ill. 1998) (because binding tariffs are no longer required, there is no presumption that a shipper would know what they are); *Cf. Tempel,* 211 F.3d at 1031 ("[W]ith that doctrine defunct for motor transport, it is hard to envisage how a shipper can be said to agree to a limitation of liability of which it lacked actual knowledge.").

Because National has failed to point to evidence showing that Nematollahi knew the standard limitations period was two years and one day, this court cannot conclude that the parties have contracted to a limitations period.

### 2. Disallowance

Even if this court could determine that a limitations period had been agreed upon, National's statute of limitations defense fails because the limitations period was never "triggered." National argues that its November 13, 1996, letter to Nematollahi was an effective disallowance, thereby triggering the statute of limitations.

It is well-settled that a disallowance must be "clear, definite, and unequivocal." *Morrell,* 495 F.2d at 333. In considering whether a letter of disallowance is clear, definite, and unequivocal, this court looks to whether the letter gave clear notice that the submitted claim was

denied. *Id.; see also White*, 758 F.Supp. at 1242.

This court concludes that the November 13, 1996, letter was not a sufficiently clear, final, and unequivocal denial of Nematollahi's claim. National's letter acknowledges receipt of Nematollahi's claim and indicates that Starving Students contacted National. National's letter did not deny Nematollahi's claim, but directed him to seek satisfaction from Starving Students. Because there was no clear notice that Nematollahi's submitted claim was denied, the statute of limitations was never "triggered." *See Morrell*, 495 F.2d at 333.

### C.     Doctrine of Laches

National argues that Nematollahi's claim is barred by the doctrine of laches. Laches is an equitable doctrine that permits a court in its discretion to bar an otherwise timely complaint where the plaintiff has failed to diligently pursue his cause of action to the detriment of the defendant. *See Lingenfelter v. Keystone Consol. Indus., Inc.*, 691 F.2d 339, 340 (7th Cir. 1982). The doctrine of laches has two elements: (1) a lack of diligence by plaintiff in bringing suit; and (2) prejudice to the defendant as a result of the delay. *Miller v. City of Indianapolis*, 281 F.3d 648, 653 (7th Cir. 2002). Under this test, a plaintiff must explain why it delayed bringing the lawsuit. *Zelany v. Lyng*, 853 F.2d 540, 541 (7th Cir. 1988); *Lingenfelter*, 691 F.2d at 340.

Even if the plaintiff does not offer an adequate excuse for the delay, the plaintiff's action is still viable if the defendant does not bear its burden of showing that it was prejudiced by the delay. *See Conopco, Inc. v. Campbell Soup Co.*, 95 F.3d 187, 192 (7th Cir. 1996). "A defendant has been prejudiced by a delay when the assertion of a claim available some time ago would be 'inequitable' in light of the delay in bringing that claim .... [and] ensues when a defendant has changed his position in a way that would not have occurred if the plaintiff had not delayed."

11

*Conopco,* 95 F.3d at 192 (quotations omitted).

National's laches argument fails. Assuming, arguendo, that Nematollahi inexcusably failed to exercise diligence in bringing this lawsuit, National has not established that it has been prejudiced by the delay. National simply asserts:

> Forcing National to litigate this claim while the evidence is no longer fresh and employees relevant to the activities at hand are no longer available to National acts as a great hardship on National. National is prejudiced by the fact that it will never be able to operate its business with relative security and stability because it will never be able to accurately estimate its outstanding legal obligations. National must be able t [sic] operate its business in an efficient manner without worrying about defending itself against stale claims.

(Defendant's Reply Brief, p. 3). Without any substantiation to these claims, National has failed to make an adequate showing of prejudice resulting from Nematollahi's failure to file his claim earlier. *See Martin v. Consultants & Adm'rs, Inc.,* 966 F.2d 1078, 1091 (7th Cir. 1992) (party must make adequate showing of harm, not mere inconvenience); *see also Drake v. Minnesota Mining & Mfg. Co.,* 134 F.3d 878, 887 (7th Cir. 1998) (Rule 56 requires more than a bald assertion of the general truth of a particular matter – it requires affidavits that cite specific concrete facts establishing the existence of the truth). In addition, National has not argued that it has changed its position in a way that would not have occurred if Nematollahi brought this lawsuit earlier. *See Conopco,* 95 F.3d at 192. Therefore, this court, in its discretion, denies National's laches defense.

### D. Release of Shipment

Next, National argues that Nematollahi's claim is limited to $5,000 because he clearly and unambiguously released his shipment, including damages resulting from "loss and damage," for the amount of $5,000.

12

Although the Carmack Amendment preempts state and common law remedies available to a shipper for loss or damage to interstate shipments, it preserved the common law rule that parties are allowed to contract for a limitation of liability. *See Pinkerton*, 89 F.3d at 456. The Seventh Circuit has held that four requirements must be met in order to limit liability under the Carmack Amendment; a carrier must: "(1) maintain a tariff within the prescribed guidelines of the Interstate Commerce Commission; (2) obtain the shipper's agreement as to his choice of liability; (3) give the shipper a reasonable opportunity to choose between the two or more levels of liability; and (4) issue a receipt or bill of lading prior to moving the shipment." *Hughes v. United Van Lines, Inc.*, 829 F.2d 1407, 1415-16 (7th Cir. 1987). Because the tariff filing requirement has been abolished, *see Tempel*, 211 F.3d at 1030, keeping a tariff on file with the ICC is no longer a requirement for limiting liability. *Opp v. Wheaton Van Lines, Inc.*, 231 F.3d 1060, 1063 (7th Cir. 2000). Instead, a carrier must make its "tariffs" available to shippers upon their request. *Id.*

Giving the terms and conditions of the Agreement and Service Agreement their plain and ordinary meaning, it is clear that Nematollahi agreed to limit the carriers' liability to $5,000. Indeed, Nematollahi does not dispute that these contracts state: "Shipper hereby releases the entire shipment to a value not exceeding $5,000" and that he filled in the amount of $5,000 in his own handwriting. Instead, Nematollahi argues that he was not given a reasonable opportunity to choose among the different levels of coverage for loss or damage to his household goods.

Nematollahi's claim that he was not given reasonable options for coverage is disingenuous. Nematollahi's agreement with Starving Students unequivocally states, "There are three (3) options available to cover loss or damage." Both the Starving Student's Agreement and

13

National's Service Agreement delineate three choices of coverage, including actual cash value, full value protection, and 60 cents per pound per article or minimum coverage.

Nematollahi also argues that because the Agreement and Service Agreement are contracts of adhesion, he had no real bargaining power and was forced to accept the terms and conditions of the contracts.

Nematollahi is correct in his assertion that bills of lading are contracts of adhesion, and thus, any ambiguities in the contracts must be resolved against the carrier/drafter. *See Gamma-10 Plastics, Inc. v. American President Lines, Ltd.*, 32 F.3d 1244, 1250 (8th Cir. 1994); *Mori Seiki USA v. M.V. Alligator Triumph*, 990 F.2d 444, 448 (9th Cir. 1993); *Allied Chem. Int'l Corp. v. Companhia de Navegacao Lloyd Brasileiro*, 775 F.2d 476, 482 (2nd Cir. 1985); *see also Sanfilippo & Son, Inc. v. Consolidated Rail Corp.*, 659 F.Supp. 990, 994 n.6 (N.D. Ill. 1987).

Nematollahi's argument, however, is undeveloped. Nematollahi has not pointed to any ambiguities in the contracts or provided any evidence that he was in an unequal bargaining position or was forced into the contract. In addition, some evidence of fraud or deceit is necessary to make his claim colorable. *See Koveleskie v. SBC Capital Mkts., Inc.* 167 F.3d 361, 367 (7th Cir. 1999) (contracts not void where parties have unequal bargaining power unless fraud or wrongdoing established); *cf. Hughes*, 829 F.2d at 1416 (absent fraud or deceit, party cannot avoid contract because he did not read it or took someone else's word as to what it contained).

Therefore, Nematollahi's self-serving statements that he did not have equal bargaining power and that he was forced into the contracts with National and Starving Students does not create a genuine issue of material fact for trial. *See Albiero v. City of Kankakee*, 246 F.3d 927, 933 (7th Cir. 2001).

### E. Joint and Severable Liability

Last, National claims that Nematollahi is seeking double recovery from both Starving Students and National. Under the Carmack Amendment, the issuer of the bill of lading and the delivering carrier are prima facie liable even though the goods may have been damaged by other carriers. *Pizzo*, 258 F.3d at 634. Therefore, Nematollahi may sue both Starving Students and National because under the Carmack Amendment they are jointly and severally liable to Nematollahi unless one of them can show that they were not to blame. *Id.* As such, National's double recovery argument is without merit.

### III. CONCLUSION

For the foregoing reasons, National's Motion for Summary Judgment [25-1] is granted as to the value of Nematollahi's claim. Because Nematollahi released his goods for a value not to exceed $5,000, National's and Starving Students' liability, to the extent it is established, will be limited to $5,000.

**ENTER:**

**BLANCHE M. MANNING**
**U.S. DISTRICT COURT JUDGE**

DATE: SEP 0 4 2002

15